IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.             ) | No. 2:10-cr-20042-JPM-tmp |
| ) | |
| DEMARCO TUGGLE, ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Demarco Tuggle's ("Defendant") Motion to Suppress Evidence (Docket Entry ("D.E.") 27), filed September 24, 2010. The Court referred the motion to the Magistrate Judge for Report and Recommendation on September 28, 2010. (D.E. 29.) The Magistrate Judge held a hearing on the motion on November 4, 2010. (D.E. 32.) The Report and Recommendation was received on December 30, 2010. (D.E. 41.)

The Magistrate Judge recommended that the Court deny the motion to suppress. (Report & Recommendation ("Rep. & Rec.") (D.E. 41) 2.) Defendant filed his objections on February 7, 2011. (D.E. 53.) The Government did not respond to Defendant's objections. After de novo review, the Court ADOPTS the Report and Recommendation in its entirety and DENIES the motion to suppress.

**I. Background**

Defendant is charged in a two-count indictment with (1) possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g), and (2) possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). (D.E. 1.)  He seeks to suppress "any and all evidence and the fruits thereof gathered as a result of the illegal detention of Defendant and the warrantless search of Defendant's vehicle . . . ."  (Mot. to Suppress (D.E. 27) 1.)

The Court notes at the outset that the Magistrate Judge was forced to choose between conflicting accounts of the events that occurred on July 19, 2008.  The Magistrate Judge credited the testimony of Memphis Police Department ("MPD") detectives Jewell Yancey ("Yancey") and Brian Nemec ("Nemec").  (See Rep. & Rec. 2 ("[T]he court finds . . . the testimony of the detectives to be credible . . . .").)  The Magistrate Judge discredited Defendant's testimony and the testimony of his witnesses, Lavonzell Ward ("Ward") and Corsett Vasser.  (Id.)

The Court has reviewed the November 4, 2010 hearing transcript.  The Magistrate Judge was in the best position to evaluate the witnesses' credibility (or lack thereof), and the transcript "provides 'no compelling reason to second-guess the magistrate judge's decision.'"  United States v. Freeman, No.

08-5677, 2010 WL 4244268, at *9 (6th Cir. Oct. 19, 2010); see also United States v. Lowe, No. 3:09-CR-110, 2010 WL 1491417, at *1 (E.D. Tenn. Apr. 12, 2010) ("The court will defer to the credibility finding[s] by the magistrate judge who had an opportunity to evaluate the demeanor and consistency of the witnesses' testimony."); United States v. Brown, No. 1:07-CR-9, 2007 WL 1345463, at *1 (E.D. Tenn. May 7, 2007) ("Credibility determinations of the magistrate judge . . . should be accepted by a district judge unless . . . he finds a reason to question the magistrate judge's assessment."). After reviewing the record, the Court finds that the testimony of Yancey and Nemec is generally credible. Accordingly, no rehearing is required.

On July 19, 2008, officers from the MPD's Organized Crime Unit ("OCU") were patrolling the area around Vollintine Avenue and Breedlove Street as part of the MPD's "Operation Summer Heat" initiative.[1] (Nov. 4, 2010 Hr'g Test. of Jewell Yancey ("Yancey Test.") 9.) The initiative involved "checking hot spots of high drug activity and crime[]." (Id. at 10.)

While on patrol, OCU members noticed seven to ten people gathered in the parking lot of a grocery store. (Id. at 11.) The store was closed. (Id.) Yancey saw "beer bottles and

---

[1] Yancey testified that "more than five . . . but less than ten" officers comprised the OCU that evening. (Yancey Test. 10.) Some of the officers were dressed in plain clothes; others wore "black fatigues." (Id. at 27.) The black fatigues are also called "BDUs." (Nov. 4, 2010 Hr'g Test. of Brian Nemec ("Nemec Test.") 64.)

3

liquor bottles on top of cars." (Id.)  Some of the individuals appeared to be drinking.  (Id.)

The OCU pulled into the lot.  (Id.)  Yancey and the other officers asked the individuals what they were doing there. (Id.)  She stated that they seemed "calm" and that "nobody was nervous."  (Id. at 12.)  The officers asked individuals for their identification.  (Id.)  Ward then admitted that he was carrying a gun.  (Id.)  Nemec helped Yancey secure the gun. (Nemec Test. 44.)

After the gun was secured, Nemec and the other officers resumed checking individuals' identification and talking to them.  (Id. at 45.)  Nemec testified that he "walk[ed] around the cars . . . talking to people . . . and basically seeing . . . what [he] could see."  (Id.)  He spotted a red Lincoln Town Car "that everybody was kind of standing around . . . ."  (Id. at 46.)  Nemec asked the individuals who owned the car.  (Id.) Defendant said that it was his.  (Id.)

Nemec asked Defendant for permission to search the car. (Id.)  Defendant told Nemec to "go ahead and search it [because] there is nothing in it."  (Id. at 52.)  Nemec began the search. (Id. at 47.)  He soon noticed a non-factory radio jutting out of the dashboard.  (Id.)  The radio did not appear to be fastened by any bolts or screws.  (Id.)  Nemec knew from his experience with Lincoln Town Cars that the area behind the radio is often

4

used to hide contraband.  (Id.)  Nemec slid the radio out and saw a "large-caliber pistol down inside behind [it]."  (Id. at 48.)  The gun was loaded.  (Id.)

Nemec checked the gun's serial number using a police database.  (Id. at 51.)  He learned from the database query that the gun had been reported stolen on July 16, 2008.  (Id. at 52.)  Defendant was arrested for possessing a stolen firearm.

## II. Standard of Review

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).  After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations.  28 U.S.C. §636(b)(1)(C).  The Court is not required to review those aspects of the Report and Recommendation to which no objection has been made.  Thomas v. Arn, 474 U.S. 140, 150 (1985).  The Court should adopt the findings and recommendations to which there is no objection. Id.; see also United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

## III. Analysis

The Magistrate Judge recommended that the motion to suppress be denied.  (Rep. & Rec. 2.)  In doing so, the Magistrate Judge proposed the following conclusion of law:  (1) the initial encounter between Defendant and the officers was

5

consensual; (2) the consensual encounter became an investigative detention under Terry v. Ohio, 392 U.S. 1 (1968); (3) the detention was constitutional; and (4) the detention "de-escalated to a consensual encounter." (Id. at 10-12.)

### a. Defendant's Objections to Proposed Findings of Fact

Defendant offers several objections to the Magistrate Judge's proposed findings of fact. The Court addresses the objections in turn.

First, Defendant argues that the Magistrate Judge ignored "the critical question of whether or not [Defendant] and his friends were free to leave during the time that the officers were on the lot." (Def.'s Objections to Magistrate's Rep. & Rec. ("Def.'s Objs.") (D.E. 53) 2.) Defendant's argument lacks merit. The Magistrate Judge squarely addressed whether Defendant was free to leave the parking lot. Indeed, the fact that Defendant was not free to leave until his identification had been checked led the Magistrate Judge to conclude that Defendant was "seized" for the purposes of the Fourth Amendment. (Rep. & Rec. 10.) Accordingly, Defendant's objection is OVERRULED.

Second, Defendant objects to Nemec's statement during cross-examination that the OCU was "fishing" for evidence of illegal activity. (Def.'s Objs. 2.) Nemec's characterization of the OCU's activities is irrelevant. The Magistrate Judge

6

concluded that the officers "had reasonable suspicion that criminal activity was afoot." (Rep. & Rec. 11.) The Court agrees. Yancey testified that she saw several individuals gathered in the parking lot of a grocery store that was closed. (Yancey Test. 11.) There were open containers of alcohol present, and some of the individuals appeared to be drinking. (Id.) The officers had reasonable suspicion, therefore, that Tennessee's open-container and criminal trespassing laws were being violated. Accordingly, Defendant's objection is OVERRULED.

Third, Defendant contends that "characterizing [an encounter involving] five to ten armed police officers, many dressed in black BDUs/fatigues . . . as 'consensual' is incredible on its face." (Def.'s Objs. 2.) Defendant cites no case law in support of his argument that officers' choice of clothing determines whether an encounter with the police is consensual. Moreover, the Court notes that some officers wore plain clothes. (Yancey Test. 27.) Accordingly, Defendant's objection is OVERRULED.

Finally, Defendant points to an inconsistency between Nemec and Yancey's testimony. Nemec testified that Defendant consented to the search within ten minutes of the OCU's arrival. (Nemec Test. 72.) Yancey testified that Defendant gave his consent "about thirty minutes" after the OCU arrived. (Yancey

7

Test. 19.) The Magistrate Judge credited Nemec's testimony because it was Nemec, not Yancey, who asked Defendant for permission to search the car. (Rep. & Rec. 5 n.4.) The Court finds no error in the Magistrate Judge's decision to credit Nemec's testimony on this point. It was reasonable to conclude that Nemec—-the officer who requested Defendant's consent to search—-could more accurately estimate the time that had elapsed after the OCU's arrival.[2] Accordingly, Defendant's objection is OVERRULED.

### b. Defendant's Objections to Proposed Conclusions of Law

Defendant offers two objections to the Magistrate Judge's proposed conclusions of law. The Court addresses each objection in turn.

Defendant argues that the Magistrate Judge erred in crediting the testimony of Yancey as to whether Defendant was detained. (Def.'s Objs. 5.) Yancey testified that Defendant was "more than likely . . . no[t]" free to leave the parking lot until his identification had been checked. (Yancey Test. 32.) Nemec testified that Defendant was free to leave at any time. (Nemec Test. 70.) The Magistrate Judge, after considering the totality of the circumstances, concluded that Defendant had been

---

[2] The Court notes that Yancey's estimate was likely flawed for another reason. Yancey initially stated that the entire encounter lasted "maybe thirty minutes or so." (Yancey Test. 12.) She later testified that Defendant consented to the search "about thirty minutes" after the OCU arrived. (Id. at 19.)

8

detained. (Rep. & Rec. 10.) Defendant contends that "the Magistrate believed . . . Yancey's testimony was more reliable regarding whether the defendant was ever detained, but . . . Nemec's testimony was more reliable regarding the length of the detention." (Def.'s Objs. 5.)

The Magistrate Judge's decision to credit Yancey's testimony on this point worked in Defendant's favor. A consensual encounter is not a seizure; thus, "a police officer does not need reasonable suspicion or probable cause before approaching an individual to make an inquiry." United States v. Campbell, 486 F.3d 949, 954 (6th Cir. 2007). A seizure, by contrast, requires that an officer "have a reasonable suspicion of criminal activity . . . or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment." Id. (citing Reid v. Georgia, 448 U.S. 438, 440 (1980)). If the Magistrate Judge had instead credited Nemec's testimony on this point, as Defendant urges the Court to do, then the encounter between Defendant and Nemec would have received less judicial scrutiny. Defendant's objection is OVERRULED.

Defendant also contends that "no reasonable person would ever feel free to terminate an encounter with between five and ten officers in black [B]DUs, who had descended upon the group [all] at once . . . ." (Def.'s Objs. 6.) Addressing

9

Defendant's argument requires a discussion of the relevant case law.

An investigative detention under Terry is constitutional if two prongs are met. United States v. Caruthers, 458 F.3d 459, 464 (6th Cir. 2006). First, there must be "reasonable suspicion to justify the investigative detention." Id. This prong is analyzed under the totality of the circumstances. Id. (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). Officers must have a "particularized and objective basis for suspecting . . . criminal activity." Id. (quoting United States v. Cortez, 499 U.S. 411, 417-18 (1981) (internal quotations omitted)). In this case, the officers saw seven to ten people assembled in the parking lot of a grocery store that was closed, in possible violation of both Tennessee's criminal trespassing law and open-container law. Accordingly, Nemec had reasonable suspicion to justify the investigative detention of Defendant.

Second, the degree of intrusion must be reasonable. Caruthers, 458 F.3d at 468. In determining the degree of intrusion, the Court examines (1) the length of the detention and (2) the means used. Id. Only ten minutes passed before Defendant's identification was checked and Nemec asked Defendant for permission to search the car. (Nemec Test. 72.) The officers did not draw their guns, nor did they handcuff anyone.

(Yancey Test. 27-28; Nemec Test. 68.)  Accordingly, both the length of the detention and the means used were reasonable here.

The Magistrate Judge concluded that "[o]nce the officers returned [Defendant's] identification to him, the Terry detention de-escalated to a consensual encounter . . . ."  (Rep. & Rec. 12.)  An encounter with police may become consensual upon the termination of an investigative detention.  United States v. Sanchez-Pena, 336 F.3d 431, 441-42 (5th Cir. 2003) (citing, inter alia, Ohio v. Robinette, 519 U.S. 33, 35 (1996)).  Yancey testified that Defendant was free to leave after his identification was checked.  (Yancey Test. 32.)  Nevertheless, the Court must ask whether "under the totality of the circumstances . . . a reasonable person would not have felt free to leave."  United States v. Alston, 375 F.3d 408, 411 (6th Cir. 2004).

The Court now turns to the totality of the circumstances.  Nemec obtained Defendant's consent to search the car in a non-threatening manner.  (See Nemec Test. 52 ("I asked whose car it was, and that's when [Defendant] said it's his car."); see also Florida v. Bostick, 501 U.S. 429, 434 (1991) ("Since Terry, we have held repeatedly that mere police questioning does not constitute a seizure.").  While there were between five and ten police officers at the scene, the atmosphere was not "police dominated."  Alston, 375 F.3d at 411.  The officers did not draw

11

their guns, nor did they handcuff anyone. (Yancey Test. 27-28; Nemec Test. 68.) Some officers wore plain clothes. (Yancey Test. 27.) Nemec never asked Defendant to accompany him to a different location. The Court concludes that a reasonable person would have felt free to leave under the circumstances. Accordingly, Defendant's objection that "no reasonable person would ever feel free to terminate an encounter with . . . five and ten officers in black [B]DUs" is OVERRULED.

## IV. Conclusion

For the foregoing reasons, after de novo review, the Court ADOPTS the Report and Recommendation in its entirety. Accordingly, Defendant's Motion to Suppress Evidence is DENIED.

IT IS SO ORDERED this 18th day of February, 2011.

                                            __/s/ Jon P. McCalla_____
                                            JON P. McCALLA
                                            CHIEF U.S. DISTRICT JUDGE